In the Matter of the Application of The Board of Street Opening Relative to Acquiring Title to One Hundred and Twenty-eighth Street Between Amsterdam Avenue and Convent Avenue, in the Twelfth Ward of the City of New York.

D. G. Yuengling Brewing Company and Another, Appellants, The Mayor, Aldermen and Commonalty of the City of New York, Respondent.

*Chapter* 209 *of* 1839— *how limited* — *classification of streets in the city of New York* — *section* 990 *of chapter* 410 *of* 1882 — *discontinuance of a street opening proceeding under* — *interests of mortgagees in the real estate affected.*

The general provisions of chapter 209 of the Laws of 1839 as to street openings are limited by special acts conferring power upon the various departments of the government of the city of New York.

Where such power is given by special acts, to be exercised in the public interest, and it is attempted to be exercised, it cannot be taken away by an appeal to the provisions of such act of 1839, conferring rights, upon the majority of property owners to be affected thereby, to have the proceeding discontinued.

The classification of streets in the city of New York, into those that the public authorities may open of their own accord, and those for the opening of which proceedings should be initiated by the property owners, was not intended to be disturbed by chapter 209 of the Laws of 1839, of which section 990 of chapter 410 of the Laws of 1882 (the Consolidation Act) is a part.

The public authorities of the city of New York have the right to proceed with public improvements in the way of street openings without interference by a majority of the owners affected by such improvements, except in regard to streets and avenues where such officers proceed upon the petition of the property owners themselves, in which event section 990 of chapter 410 of the Laws of 1882 applies, and upon the coming in of the report, if it appears that a majority in interest object, they have the right to have the proceedings discontinued.

Mortgagees of real estate to be affected by a proposed street opening have an interest in the property within the meaning of section 990 of chapter 410 of the Laws of 1882, and their interests must be considered in determining whether persons interested " to the amount of a majority in amount of the whole assessments and awards " appear and object to further proceedings.

Appeal by the D. G. Yuengling Brewing Company and another from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of July, 1894, granting a motion

made to confirm the report of commissioners of assessment, and denying a motion to discontinue the proceeding.

*Louis Marshall,* for the appellants.

*John P. Dunn,* for the respondent.

O'BRIEN, J. :

.The board of street opening and improvement presented to this court a petition, reciting that it was necessary, useful and proper for the public interest to acquire title, for the use as a public street, to certain lands upon what would be when opened One Hundred and Twenty-eighth street, between Amsterdam avenue and Convent avenue, in this city. The commissioners appointed pursuant to the petition made a report, awarding as damages to divers persons the sum of $1,105, taxing the costs at $1,006.48, and assessing those claimed to be benefited $2,111.48. Of the assessments thus laid nearly $1,900 was against the appellants, who, upon the application to confirm the report, moved for the discontinuance of the proceedings, pursuant to the provisions of section 990 of the Consolidation Act (Chap. 410, Laws 1882), which, among other things, provides that, " upon the coming in of the said report  *  *  *  if persons who appear by the said report to be interested, either by assessment or for benefit or award for damages, to the amount of a majority in amount of the whole assessments and awards, shall appear and object to further proceedings upon the said report, the court shall order the same to be discontinued, and the same shall thenceforth be discontinued."

There can be no doubt that if this section has application to a proceeding such as was here initiated it is controlling, and the appellants were entitled to a discontinuance of the proceeding as a matter of right. The question is, does this section apply to a proceeding such as this ?

By the Laws of 1807, and subseqently by the Laws of 1839 (Chap. 209), 1873 (Chap. 335), 1874 (Chap. 604), and 1876 (Chap. 436), statutes were passed regulating and providing for the opening of streets in different portions of the city. These were afterwards brought together and now appear in chapter 410 of the Laws of 1882, known as the Consolidation Act. Section 990 of that act was originally a portion of the act of 1839 (Chap. 209), being a general

act relative to assessments.    Section 105 of chapter 335 of the Laws of 1873 (now section 955 of the Consolidation Act) confers upon the board of street opening the power, whenever they deem it for the public interest, to lay out new streets south of Fifty-ninth street.    Section 956 of the Consolidation Act confers similar power upon the department of public works above Fifty-ninth street, except in the twenty-third and twenty-fourth wards, in which wards, ‹ by the next section, the power is conferred upon the department of public parks.    In this (section 957) and the following section, relating to the power of the department of public parks with respect to the mode of acquiring title for the use of the public to lands required for streets in the twenty-third and twenty-fourth wards, the provis-· ions are taken from chapter 604 of the Laws of 1874, and notably those portions of section 958 which permit such department, whenever it shall deem it for the public interest so to do, to acquire lands for streets, avenues, roads, public squares and places laid out by them.

By chapter 436 of the Laws of 1876, streets to be laid out by the park department under chapter 604 of the Laws of 1874, were to be divided into three classes, viz., first, second and third.    Streets of the first class were to be opened whenever, in the opinion of the department of the city government having control of such opening, the interest of the public demanded such opening; streets of the second class were to be opened only on the petition of the owners of one-third of the linear feet of frontage on such streets; and streets of the third class were to be opened only on the petition of the owners of three-fourths of the linear feet of frontage.

In *The Matter of Ryder Avenue* (No. 324, vol. 31, 1885, Ct. of App. Cas., at the Bar Assn.; State Library, vol. 986, case 10, Ct. of App. Cas.; *Matter of Comrs. of Public Parks Relative to Ryder Avenue,* 36 Hun, 645; *Matter of Comrs. of Public Works,* 99 N. Y. 683), which was a proceeding initiated in 1885 by the public authorities, an application such as is here made was presented for leave to discontinue by property owners representing the necessary majority of awards and assessments, under section 990 of the Consolidation Act; and it was held that that section did not apply, the judge at Special Term, in his opinion, saying: " Rider avenue is an avenue of the first class under the provisions of the act of ·

1874 just referred to, and can, therefore, be opened if the commissioners are of the opinion that the interests of the public demand such opening and grading."

It will thus be seen that, prior to the Consolidation Act, the provision permitting a discontinuance did not apply to all proceedings relating to street openings or the laying out of public squares or spaces, it being, in effect, held that the act of 1839 is general in its provisions and applies to all cases not governed by any special act; that as the power was given by the act of 1876 to the "board or department of the city government having control of such opening" to open streets of the first class, as to such streets the act of 1839 was superseded. There is authority, therefore, for the proposition that the general character of the act of 1839 is to be limited by special acts conferring power upon departments of the city government; that where such power is given in the public interests and it is attempted to be exercised, it cannot be nullified by an appeal to the act of 1839 conferring the right upon the majority of property owners to be affected. (See, also, *Matter of Board of Street Opening Twenty-second Ward Park*, 1 N. Y. Supp. 145; 16 N. Y. St. Repr. 91.) In this last case it appeared that the Legislature declared that a certain plot of land thereafter should be known on the map of the city as a public place; held, that section 990 had no application to such a proceeding, but referred only to cases in which there were both awards for damages and assessments for benefits, not to those in which a tax was laid upon the city at large.

Although as now found in the Consolidation Act, the classification of streets in regard to other portions of the city is not so marked or distinct, it will be found that a distinction is always made between those streets that are to be opened pursuant to the power conferred upon the public authorities and those opened upon the application of the property owners.

Section 955, chapter 410 of the Laws of 1882, as amended by chapter 185 of the Laws of 1885, authorized the board of street opening and improvement to lay out and open streets, avenues, etc., " whenever they may deem it for the public interest so to do," and the counsel to the corporation is required, upon the request of said board, to immediately take proceedings to acquire title to the land to be taken.

Section 963, chapter 410 of the Laws of 1882, authorizes the mayor, aldermen and commonalty of the city of New York to open any street, etc., laid out by the commissioners under the act of 1807, either of their own volition or upon the petition of three-quarters of the linear frontage thereon.

It provides  *  *  *  " And also whenever and as often as so many proprietors of lands fronting on any such street  *  *  * as shall together own three-fourth parts of all the lands fronting on such street  *  *  *  shall by petition desire the said mayor, aldermen and commonalty to open any such street  *  *  *  and the said mayor, aldermen and commonalty shall deem the opening thereof to be necessary or useful, it shall be lawful for the said mayor, aldermen and commonalty to cause the same to be opened."

We think that there is force, therefore, in the claim of the city, that this classification of streets into those that the public authorities could open of their own accord, and those for the opening of which proceedings should be initiated by the property owners themselves, was not intended to be disturbed by the act of 1839, of which section 990 of the Consolidation Act is a part.

In different portions of the Consolidation Act we find the right conferred upon the public authorities, whenever they deem it for the public interest, to open streets, avenues or public places. If it could be held that section 990 had reference to proceedings so initiated by the public authorities, then it necessarily would be restrictive of the power which in the broadest terms is given to them, whenever they deem it for the public interest, to open and lay out streets and public places. As stated, the act of 1839 was general and related to all proceedings connected with public improvements wherein there were assessments and awards; but the acts conferring the power upon the different boards and departments of this city being special, must be given force and effect, in view of their purpose and scope and in the public interest. We think that this can be done by leaving, as the Legislature undoubtedly intended to leave, in the public authorities the right to proceed with public improvements in the way of street openings without interference by a majority of the owners affected by such improvements. But, in regard to streets and avenues where such officers proceeded upon the petition of the property owners themselves, we think that section

990 applies, and, upon the coming in of the report, if it appears that a majority in interest object, they have the right to discontinue the proceedings. This construction only can harmonize the conflicting provisions of the Consolidation Act relative to public improvements.

In this particular case, we think, for another reason, that the judge below was right. It is true that the appellants are the owners of the equity of redemption in lands abutting upon the proposed street, but it also appears that such lands are mortgaged for very large amounts and that the mortgagees were neither present upon the motion nor have they consented to a discontinuance of the proceedings. That the mortgagees have such an interest in the property within the meaning of the section we think apparent. As they have not united with the owners of the equity of redemption it cannot be said, upon the evidence furnished to the court below, that those appearing and consenting to a discontinuance of the proceedings represented a majority in amount of those who were interested.

We think the order below was right and should be affirmed, with ten dollars costs and disbursements.

VAN BRUNT, P. J., and PARKER, J., concurred.

Order affirmed, with ten dollars costs and disbursements.